MORRISON-KNUDSEN COMPANY, INC., appellant, v. STATE TAX COMMISSION OF IOWA and members, appellees.

No. 47677.

(Reported in 44 N.W.2d 449)

34

OCTOBER 17, 1950.

REHEARING DENIED JANUARY 9, 1951.

Valentine & Greenleaf, of Centerville, for appellant.

Robert L. Larson, Attorney General, and Henry W. Wormley, Special Assistant Attorney General, for appellees.

GARFIELD, C. J.—This appeal presents two main questions: 1) Was the property upon which plaintiff paid a use tax "purchased * * * for use in this state" within the meaning of section

423.2, Codes 1946 and 1950? 2) If not so purchased, does mandamus lie to compel defendant, State Tax Commission, to refund the tax?

From the stipulated facts it appears plaintiff is a corporation organized under Delaware laws with its principal place of business at Boise, Idaho, engaged in large construction jobs for railroads and others throughout the United States. In performing such work plaintiff purchased, transported from place to place and used in various states many pieces of construction equipment. About May 1945, plaintiff commenced construction work in Iowa for the Rock Island railroad which it completed later that year. In performing such work plaintiff brought into Iowa one hundred five items of construction equipment which it removed from the state upon completion of the work.

Shortly after plaintiff began the work in Iowa an employee of defendant-commission set up a proposed assessment of use tax against plaintiff based on the original purchase price of the equipment brought into Iowa. Plaintiff denied liability for use tax on the equipment and also contended if it was liable at all for such tax, it should be imposed on the basis of the value of the equipment when brought into Iowa rather than its original purchase price. In all plaintiff paid $5121.86 of use tax upon the original cost of its construction equipment. It later filed with defendant-commission its claim for a refund of such amount which defendant denied. We will mention later some other facts.

The trial court held the use tax was rightly collected and plaintiff is not entitled to any refund.

I. The tax paid by plaintiff is imposed by Code section 423.2 in this language: "Imposition of tax. An excise tax is hereby imposed on the use in this state of tangible personal property purchased * * * for use in this state, at the rate of two per cent of the purchase price * * *."

Plaintiff contends this statute is not broad enough to subject it to a tax on the use of much of its property. It does not rely upon any proviso, exemption or exception in the applicable law as the taxpayer did in Peoples Gas & Elec. Co. v. State Tax Comm., 238 Iowa 1369, 28 N.W.2d 799; Hale v. Iowa State Board of Assessment and Review, 223 Iowa 321, 271 N.W. 168,

affirmed 302 U. S. 95, 58 S. Ct. 102, 82 L. Ed. 72, and other cases.

Section 423.2 should be strictly construed against the taxing body—liberally in favor of the taxpayer. It must appear from the language of the statute the tax assessed against plaintiff was clearly intended. See Palmer v. State Board of Assessment and Review, 226 Iowa 92, 94, 283 N.W. 415, 416, and citations; Moorman Mfg. Co. v. Iowa Unemployment Comp. Comm., 230 Iowa 123, 130, 296 N.W. 791, 794; Merchants Supply Co. v. Iowa Employment Sec. Comm., 235 Iowa 372, 378, 16 N.W.2d 572, 576; 2 Cooley Taxation, Fourth Ed., section 503; 51 Am. Jur., Taxation, sections 308, 310; 61 C. J., Taxation, section 119.

We think section 423.2 does not, in clear and unmistakable terms, impose a tax upon personal property first used in this state for a limited period long after its purchase and use in other states, without prior intent to use it here.

Contrary to the argument of the tax commission, the statute does not impose a tax on the use in this state of all personal property but only such property as was *purchased for use* here. The effect of the commission's argument is that a tax is imposed by statute on the use here of all personal property used here at any time during its life, whether or not purchased for such purpose. Defendant construes the statutory language "purchased * * * for use in this state" to mean "purchased and later, regardless of time, used in this state." This amounts to reading the quoted language out of the statute. Of course the legislature is presumed to have used the words "purchased * * * for use in this state" advisedly and for a purpose. Hartz v. Truckenmiller, 228 Iowa 819, 824, 293 N.W. 568; 50 Am. Jur., Statutes, section 358.

That the words "purchased * * * for use in this state" were deliberately used in section 423.2 is indicated by section 423.5 which states "* * * evidence that tangible personal property was sold * * * for delivery in this state shall be prima facie evidence * * * [it] was sold for use in this state." Neither section 423.5 nor any other statute provides, what defendant in effect argues, that use in Iowa is prima facie evidence the property was purchased for use in this state. Certainly most of the

property here involved was not sold "for delivery in this state" as contemplated by 423.5.

An indication similar to that in 423.5 appears in section 423.3 which makes 423.2 applicable to surplus government property but provides, "Industrial materials and equipment owned by the federal government within the state of Iowa of a character not ordinarily readily obtainable within the state, shall not be subject to use tax when sold, if * * * [they] would not be subject to use tax if such were sold outside of the state *for use in Iowa.*" (Italics added.)

In Dain Mfg. Co. v. Iowa State Tax Comm., 237 Iowa 531, 534, 22 N.W.2d 786, 788, we say the use tax is upon the use of property sold and "designed for use in Iowa."

As stated, one hundred five items of construction equipment are here involved. Defendant admits in argument, "When brought into Iowa the equipment was of varying age and value and had been purchased in various states outside Iowa and used for appellant's purposes in various states before brought into Iowa." Defendant also concedes "There is nothing in this record to show the purchaser's intent to use the property in any particular state." That of course includes Iowa.

The equipment was purchased at numerous times during the eight years before brought into Iowa for use here commencing in May 1945. It was bought mostly in states remote from Iowa and used in various remote states long before its use here. Nineteen items were purchased in California. Most of them were first used there. Much of the equipment was bought in Washington, Oregon, Idaho (where plaintiff has its principal place of business), Utah, New York (thirteen items), and North Carolina.

One caterpillar tractor was purchased in Alaska in August 1943 for $6150 and first used there. Another caterpillar tractor was bought in Washington in September 1943 for $6653 and first used in Alaska. Still another tractor was purchased in Oregon in June 1940 for $7882 and first used in Arizona. A scraper was bought in California in January 1939 for $8000 and first used there. Two other scrapers were purchased in California in July 1940 for $6332 each and first used there. Numerous comparable examples are shown by the record.

It was stipulated that $1000 "is a reasonable approximation of the actual value at date shipped to Iowa" of each of the three tractors and the first scraper just referred to, and $500 was such actual value of each of the two scrapers bought in July 1940. The tax assessed on all the equipment was at two per cent of the original purchase price which many times exceeded its value when brought into Iowa, as to numerous items.

It cannot fairly be held this property was "purchased * * * for use in this state." No decision is cited by defendant, and we think none is to be found, which would support such a holding. Certainly in the practical and realistic sense, and it would seem legally, the tractor first above referred to was purchased for use in Alaska. It was in fact used there. There is no evidence it was purchased for use here unless the fact it was used here for a time nearly two years after its purchase is sufficient. As before explained, the use in this state of property affords no basis for the tax unless the property was "purchased * * * for use in this state."

█ Whether property is purchased for use here should be determinable at or near the time of its purchase. It should not be necessary to delay determination of that question eight years until the property is first used here. Not until such use in Iowa could any claim possibly be made a use tax was owing. To repeat, the only basis for such claim is the fact of use in Iowa.

█ As stated in Chicago Bridge & Iron Co. v. Johnson, 19 Cal.2d 162, 165, 119 P.2d 945, 947, cited by defendant, " * * * the purpose sought to be accomplished by a statute relating to taxation is important in construing such statute and in determining the scope of its application." To much the same effect are State v. City of Des Moines, 221 Iowa 642, 644, 646, 266 N.W. 41; 2 Cooley Taxation, Fourth Ed., section 503; 51 Am. Jur., Taxation, section 309; 61 C. J., Taxation, section 119.

█ Our decisions have been careful to point out that the use-tax law is supplementary to the sales-tax law and protects Iowa dealers who must collect and pay a sales tax by placing them on a tax equality with competing out-of-state vendors whose sales are not subject to the sales tax. Also that the principal purpose of the use-tax law was to remedy the evil of out-of-state buying to escape the sales tax.

Peoples Gas & Elec. Co. v. State Tax Comm., supra, 238 Iowa 1369, 1372, 28 N.W.2d 799, 802, states:

"The use-tax law is supplementary to the sales-tax law. It indirectly taxes sales by taxing use. It serves not only to produce revenue but also to protect Iowa dealers by placing them on a tax equality with out-of-state vendors whose sales are not subject to a two per cent sales tax. [Citations.] * * *

"This out-of-state buying to escape the sales tax was harmful to Iowa sellers and to the sales tax. *The principal purpose of the enactment of the use-tax law was to remedy this evil.*" (Italics added.)

See also Dain Mfg. Co. v. Iowa State Tax Comm., 237 Iowa 531, 534, 22 N.W.2d 786, 788; Zoller Brewing Co. v. State Tax Comm., 232 Iowa 1104, 1106, 1107, 5 N.W.2d 643, 6 N.W.2d 843.

Other courts have frequently expressed views similar to those stated by us. See for example Henneford v. Silas Mason Co., 300 U. S. 577, 581, 57 S. Ct. 524, 526, 81 L. Ed. 814, 818, from which we quote with approval in the Zoller Brewing Co. case; Nelson v. Sears, Roebuck & Co., 312 U. S. 359, 363, 61 S. Ct. 586, 588, 85 L. Ed. 888, 892, 132 A. L. R. 475, 477, from which we quote approvingly in the Peoples Gas & Elec. Co. case, supra (at page 1372 of 238 Iowa, page 802 of 28 N.W.2d); Chicago Bridge & Iron Co. v. Johnson, supra, 19 Cal.2d 162, 165, 119 P.2d 945, 947, cited by defendant.

It may not fairly be said, and defendant does not argue, plaintiff's equipment was purchased outside Iowa in an effort to escape our sales tax or to take unfair advantage of Iowa dealers, nor that the dealers in Alaska, California and other remote places from whom the purchases were made were in reality out-of-state competitors of Iowa dealers. There is no reasonable possibility plaintiff would have purchased this equipment in Iowa even if the state had no sales-tax law. Iowa dealers need no protection from such purchases as were made here. These transactions are not only not within the letter of the use-tax statute, they are not within its spirit. The law was not aimed at such transactions. Certainly it is not an "evil" against

Iowa dealers for a nonresident to purchase property in a remote state for use there.

Defendant attempts to justify the trial court's holding on the theory the equipment was purchased for use wherever plaintiff's business required it. The argument is unsound and involves an unwarranted extension of section 423.2 which requires purchase for use in this state. Under defendant's reasoning a resident of another state which has no sales tax would be subject to the Iowa use tax if he moved here for a few months and brought with him his eight-year-old automobile or household furniture on the theory it was necessarily purchased for use wherever he might live. And such tax would equal two per cent of the original purchase price even if the property were worth only a small fraction thereof when brought to Iowa. If the legislature intends to impose a use tax under such circumstances it is not too much to require it to do so in terms more clear and unmistakable than the present section 423.2.

Chicago Bridge & Iron Co. v. Johnson, supra, 19 Cal.2d 162, 168, 119 P.2d 945, 948, cited by defendant, falls far short of support for its argument. The tax there was imposed on "the storage, use or other consumption in this state of tangible personal property purchased * * * for storage, use or other consumption in this state * * *." The statute thus taxes not only "use" but also "storage" and "other consumption." The taxpayer, a manufacturer of tanks, purchased unassembled parts which were delivered to it and *stored* in California. The greater part of the materials were assembled by it into tanks to be erected in California. Some other materials were purchased and stored by plaintiff outside the state for use in California as its business might require and were subsequently used there but were not intended for use in the performance of any particular contract. The court very properly holds the materials were purchased for use, storage, or other consumption in California. These brief excerpts from the cited opinion demonstrate its inapplicability here: "* * * the materials * * * were sold to it to be fabricated by it and stored and used in this state. * * * Those materials were purchased for use, storage or other consumption in this state."

It has been suggested Henneford v. Silas Mason Co., supra, 300 U. S. 577, 580, 57 S. Ct. 524, 525, 81 L. Ed. 814, is much like the present case and supports the trial court's decision. Defendant says in argument the Washington statute involved in the Henneford case "was practically identical to section 423.2." The cited case furnishes no support for the trial court's decision here. There is a vital distinction between the Washington statute and our own. The former imposed "a tax or excise for the privilege of using within this state any article of tangible personal property purchased subsequent to April 30, 1935." Unlike our 423.2 the Washington statute is not limited to the use of property purchased for use in the state. Further, the only questions urged or considered in the Henneford case were that the tax was upon the operations of interstate commerce, a discrimination against such commerce, obstructing it unlawfully, and that the tax was in fact upon the foreign sale though in form upon the use. Still further, there is no indication in the Henneford opinion or the opinion of the three-judge court from which the appeal was taken (Silas Mason Co. v. Henneford, 15 F. Supp. 958) that the machinery, materials and supplies there involved were not actually purchased for use in Washington and so used there.

We are told in argument the "tax commission has for many years interpreted the law so as to require the payment of a use tax where property has been brought into Iowa for use even though it was originally sold and used in another state." Such interpretation would be correct if the property were purchased for use in this state. There is no statutory basis for a use tax on property not so purchased and the tax commission certainly cannot create one.

Further, the case was submitted to the trial court upon stipulated facts which do not mention any administrative ruling or interpretation of the law. So far as shown, no such contention was raised in the trial court and upon familiar principles defendant is not entitled to advance it for the first time here.

However, defendant's argument cannot be accepted in any event. Neither the record nor defendant's argument calls attention to any rule or regulation of the commission under which a

use tax would be owing upon most of plaintiff's equipment. We have taken the trouble to procure a pamphlet which purports to contain rules and regulations of the commission relating to the sales tax and use tax. We assume without deciding we may resort to this pamphlet.

Rule 151, contained in the pamphlet, is as follows: "The law imposes a two per cent use tax on all purchases made outside the state of Iowa. This includes all machinery, tools, equipment and material used in the performance of a contract."

Rule 152 reads: "Contractors are required to pay two per cent use tax on all tools, equipment and machinery purchased since April 16, 1937, which are used in the performance of a contract in Iowa, unless a retail sales or use tax of two per cent or more has been previously paid in this or some other state."

It would seem rules 151 and 152 were intended to read out of section 423.2 the words "purchased * * * for use in this state." At least they ignore this language in the statute. If the rules were so intended they are clearly in conflict with the plain provisions of the statute which must control. See in this connection Iowa Farm Serum Co. v. Board of Pharmacy Examiners, 240 Iowa 734, 742, 35 N.W.2d 848, 852; Dain Mfg. Co. v. Iowa State Tax Comm., 237 Iowa 531, 536, 22 N.W.2d 786, 789, 790; 50 Am. Jur., Statutes, section 319, page 312; 59 C. J., Statutes, section 610, page 1030; Crawford Statutory Construction, section 219, page 397 ("But under no circumstances should the interpretation placed upon a statute by an administrative * * * official alter its plain language").

Under our repeated holdings this court has no power to read out of section 423.2 the words "purchased * * * for use in this state." See for example In re Guardianship of Wiley, 239 Iowa 1225, 1228, 34 N.W.2d 593, 594, and citations; Chappell v. Board of Directors, 241 Iowa 230, 232, 39 N.W.2d 628, 629. See also 50 Am. Jur., Statutes, section 231. Obviously the commission has no such power. It has authority to prescribe only such rules and regulations as are not inconsistent with the provisions of statute. Code section 422.61.

Twenty-two of the one hundred five items of equipment were in fact purchased commencing in May 1945 for use in

Iowa and first used here. They are the only items purchased after January 1945 that plaintiff brought into Iowa except one purchased in April upon which no use tax was due under Code section 423.25 because a sales tax in excess of two per cent was paid California in which state the purchase was made. Plaintiff concedes it is liable for use tax as to these twenty-two items. We hold the remaining equipment was not purchased for use in this state and no use tax was due thereon under section 423.2.

 II. We think mandamus lies to compel defendant to refund the tax which was not due.

Code sections 422.66, 422.67, made applicable to the use tax by 423.23, provide:

"If it shall appear that, as a result of mistake, an amount of tax, penalty, or interest has been paid which was not due under the provisions of this chapter, then such amount shall be credited against any tax due, or to become due, under this chapter from the person who made the erroneous payment, or such amount shall be refunded to such person by the commission. * * * [422.66].

"Wherever in any division of this chapter a refund is authorized, the commission shall certify the amount of the refund and the name of the payee to the state comptroller. Upon certification from the commission, the state comptroller shall draw his warrant on the state general fund in the amount specified payable to the named payee, and the state treasurer shall pay the same."

It appears the tax, except on the twenty-two items for which liability is conceded, was paid as a result of mistake of the tax commission in interpreting the law. Sections 422.66, 422.67 are mandatory in requiring such a tax to be credited against any tax due or to become due or refunded to the person who made the erroneous payment by certifying the amount of the refund to the comptroller. Here there is no tax due or to become due. The commission's mandatory duty was therefore to refund the tax. Mandamus lies to compel the performance of such duty. See Code section 661.1; Commercial National Bk. v. Board of Supervisors, 168 Iowa 501, 504, 150 N.W. 704, Ann. Cas. 1916C

227, and citations; annotation 93 A. L. R. 585; 55 C. J. S., Mandamus, section 187.

Sections 422.66, 422.67 are much like section 445.60, pertaining to ordinary property taxes, which reads, "The board of supervisors shall direct the treasurer to refund to the taxpayer any tax or portion thereof found to have been erroneously or illegally exacted or paid * * *." Because of this statute we have uniformly held mandamus lies to compel the refund of taxes erroneously or illegally paid even though payment was voluntary. Jewett Realty Co. v. Board of Supervisors, 239 Iowa 988, 995, .33 N.W.2d 377, 381, 382, and citations; Eyerly v. Jasper County, 72 Iowa 149, 33 N.W. 609.

Section 8613.3, Code of 1939 (now 505.11, Code of 1950), providing for refund of taxes paid by insurance companies, states: "Whenever it appears to the satisfaction of the commissioner of insurance that because of error, mistake, or erroneous interpretation of statute that [an] * * * insurance corporation has paid * * * taxes * * * in excess of the amount legally chargeable against it, the commissioner * * * shall have power to refund to such corporation any such excess * * *." By virtue of this statute we have held mandamus lies to compel the refund of taxes erroneously paid whether or not such payment was voluntary. Lincoln National L. Ins. Co. v. Fischer, 235 Iowa 506, 17 N.W.2d 273.

See also Craig v. Security Producing & Refining Co., 189 Ky. 565, 225 S.W. 729, from which we quote with approval in the Lincoln National L. Ins. Co. case (at page 515 of 235 Iowa, page 277 of 17 N.W.2d); Craig v. Frankfort Distilling Co., 189 Ky. 616, 225 S.W. 731.

Defendant contends plaintiff was confined to the administrative remedy provided by section 422.54 and since it failed to pursue such remedy the tax became irrevocably fixed. Section 422.54 is made applicable to the collection of a use tax by 423.16, which states:

"If any return required by this chapter is not filed, or if any return when filed is incorrect or insufficient, and the maker or person from whom it is due fails to file a corrected or sufficient return within twenty days after the same is required by

notice from the commission, the commission shall have the same power to determine the amount due, as is vested in the commission by sections 422.54, 422.55, and 422.57, subject to all of the provisions, and restrictions, and rights of appeal provided in said sections."

Section 422.54 is too long to quote. Like 423.16 it provides that where a return is not filed, or when filed is incorrect or insufficient and the maker fails to file another return within twenty days after notice from the commission, the commission shall determine the amount of tax due and give notice thereof to the taxpayer. Section 422.54 also states that such determination shall irrevocably fix the tax unless the taxpayer applies to the commission for a hearing within thirty days from such determination or the commission on its own motion reduces the tax.

It does not appear plaintiff did not file a return nor that it filed an incorrect or insufficient one, nor that notice was ever given plaintiff to file another return. Section 422.54 is therefore not applicable here. Plaintiff paid the commission $4118.17 on September 10, 1945, as use tax for the second quarter of 1945. It was stipulated the state treasurer, relying upon Code section 324.51, required plaintiff to pay said use tax before it could obtain a refund of Iowa motor vehicle tax due plaintiff in an amount substantially in excess of the amount of the use tax. On September 21, 1945 (eleven days after the use tax had been paid), the commission sent plaintiff a notice of use-tax assessment in the amount of $4118.17 (which was already paid) and $288.27 penalty, with the statement that the remittance of $4118.17 was to be credited on the charge. On October 3, 1945, defendant notified plaintiff the penalty (of $288.27) had been waived. So far as shown no notice of assessment was sent plaintiff for the tax claimed for the third or fourth quarters of the year.

As previously indicated it is the rule in this state by virtue of Code section 445.60 that mandamus lies to compel the refund of property taxes "erroneously or illegally exacted or paid" notwithstanding the taxpayer's failure to pursue the administrative remedy of complaint to the board of review and, if relief is

denied, appeal to the district court. Such administrative remedy is not exclusive where taxes were "erroneously or illegally exacted or paid." See Charles Hewitt & Sons Co. v. Keller, 223 Iowa 1372, 1378, 1379, 275 N.W. 94, and citations; Griswold Land & Credit Co. v. County of Calhoun, 198 Iowa 1240, 1245, 201 N.W. 11; Commercial National Bk. v. Board of Supervisors, supra, 168 Iowa 501, 504, 150 N.W. 704, Ann. Cas. 1916C 227.

In line with these decisions we now hold the administrative remedy provided by Code section 422.54 (of complaint to the tax commission) is not exclusive where as here, as a result of the commission's mistaken interpretation of the statute, a use tax was paid which was not due under the provisions of statute. Under such circumstances, by virtue of sections 422.66, 422.67, mandamus lies to compel a refund to the taxpayer.

After consideration of all questions argued the cause is reversed and remanded for a decree in harmony with this opinion.

One third the costs are taxed to plaintiff, two thirds to defendant.—Reversed and remanded.

WENNERSTRUM, SMITH, MANTZ, and HAYS, JJ., concur.

HALE, BLISS, OLIVER, and MULRONEY, JJ., dissent.

HALE, J. (dissenting)—I am unable to agree with the majority opinion in its finding as to the interpretation of the statute in question. The tax is imposed on "the use in this state of tangible personal property purchased * * * for use in this state." The difference between the two constructions centers around the words "for use in this state", the majority holding that the primary intent must be "to use in the state of Iowa." The theory of this dissent being that in the case of a general contractor who had work in more than one state the original intent in purchase of the property would be to use the property where such property is actually taken and used, I think this the more reasonable interpretation of the words used in the statute.

Plaintiff cites section 423.5 of the 1946 Code relating to evidence of use, and section 423.25 relating to taxation in another state, as evidence of the intent of the legislature. The first of these two sections merely provides that evidence of tangible personal property sold by any person for delivery in

this state shall be prima facie evidence that such tangible personal property was sold for use in this state, and second, the exemption for use tax on property that has already been subjected to a sales tax or a use tax.

Defendants' argument, in brief, is: A general contractor who purchases personal property has the intention at the time of purchase to use the property wherever his business may take him; that the intent is comprehensive and includes any state where the work requires the use of that property; that in this case the plaintiff did bring his property into the state of Iowa and used it here, as "use" is defined in the statute; that therefore, coupled with the use in Iowa, this constitutes a use within the intent of the legislature.

"Use" as defined in Code section 423.1 is as follows:

"The following words, terms, and phrases when used in this chapter [on use tax] shall have the meanings ascribed to them in this section:

"1. 'Use' means and includes the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include processing, or the sale of that property in the regular course of business * * *."

There is no question but that the property within the definition was used by the plaintiff in the state of Iowa. Defendants argue that the tax in question is on the privilege of that use within the state of Iowa, and we do not have to speculate about the plaintiff's intent because it is presumed to have intended the natural consequences of its act, namely, the use of the property in Iowa.

In Chicago Bridge & Iron Co. v. Johnson, 19 Cal. 2d 162, 168, 119 P.2d 945, 948, it is said:

"Those materials were purchased for use, storage or other consumption in this state. While it is true that they were not acquired with the express purpose of performing any specified contract or order, plaintiff was engaged in the business of selling and constructing tanks in California. In the course of its business those materials might be used in California or elsewhere.

It cannot be said therefore that they were not purchased for use here. They were purchased for use in California if and when the business required their use here to fill an order. The requirement arose and they were used in this state. It follows that those particular materials were purchased for use in California. The materials being used here follow the intent to use them here upon a certain contingency, it objectively follows that they were acquired for use here."

The California use statute differs from ours in including the word "storage", but, under our statutory definition of use, storage would be included as an incident to the exercise of right or power incident to the ownership of property. I would hold, therefore, that the principles set forth in the foregoing case apply to the situation here. The equipment or a large part of the property in question was purchased for use where the business of the plaintiff required it to be used, and it was used here. I am satisfied that to carry out the purpose of the law and at the same time equalize the burden upon the local taxpayer, when equipment is purchased for the general purpose of use wherever needed the commission is within its rights in assessing a tax in such amount as will equalize it with the burden of tax assumed by retailers in Iowa.

The statute under consideration seeks to equalize, since it may be offset if another use or sales tax has been paid on the same thing. The purpose of the use tax is that retailers in the state of Iowa shall not be subjected to an unfair advantage taken by one who purchases at retail in another state where no sales tax is exacted, and it was held in Felt & Tarrant Mfg. Co. v. Gallagher, 306 U. S. 62, 59 S. Ct. 376, 83 L. Ed. 488, that the rule laid down in Henneford v. Silas Mason Co., Inc., 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814, is that the tax was not upon interstate commerce but upon the privilege of use after commerce is at an end. See the latter case and authorities cited therein.

The intent of the statute seems to be the determining question in the case. Holding as I do I would affirm the ruling of the trial court.

BLISS, OLIVER and MULRONEY, JJ., join in this dissent.